# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JEFF MOFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:16-cv-00033 |
| | ) | |
| v. | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE |
| RICH PRODUCTS CORPORATION, | ) | NEWBERN |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 41). Plaintiff filed a response in opposition. (Doc. No. 47).[1] For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff Jeff Mofield filed suit against his former employer Defendant Rich Products Corporation for retaliatory discharge in violation of the Tennessee Public Protection Act ("TPPA"). (Doc. No. 7). Defendant processes and packages food for human consumption at its plant in Gallatin, Tennessee. (Doc. No. 48 ¶ 1). Plaintiff began working for Defendant in 1989. (*Id.* ¶ 2). Around 2005, Plaintiff began working in Defendant's waste water treatment plant ("WW Plant") as the waste water operator. (*Id.*). In that capacity, Plaintiff was responsible for ensuring waste water was in compliance with the City of Gallatin, including helping to stop spills at the WW Plant. (Doc. No. 43-1 at 7, 11, 21).

---

[1] Defendant did not file a reply.

1

## *The July 27, 2014 Spill*

At 6:27 a.m. on July 27, 2014, Plaintiff arrived at work and noticed one of the water processing tanks was foaming over. (Doc. No. 48 ¶ 11). He then went inside the WW Plant and shut off all the blowers and began starting up the system. (*Id.* ¶ 14). Plaintiff next walked to the creek to observe the spill and noticed the outfall valve was ajar because a stick was blocking it from closing. (*Id.* ¶ 15). He then removed the stick and closed the valve. (*Id.* ¶ 16).

Plaintiff proceeded to walk from the WW Plant to the main plant ("Main Plant"), where he stayed for approximately ten to twelve minutes to eat breakfast. (Doc. No. 43-2 at 10). Plaintiff then went back to the WW Plant, where he generally stayed from 6:47 a.m. until 8:11 a.m. (Doc. No. 48 ¶ 21). Around 6:50 a.m., Plaintiff called his supervisor, Sherri Blake, who did not pick up his phone call. (*Id.* ¶ 22). Plaintiff immediately texted her stating, "Need you at the plant. EQ tank has foamed over." (*Id.* ¶ 23). Plaintiff did not attempt to contact any of his other supervisors. (*Id.* ¶ 29).

Around 7:30 a.m., Blake called Plaintiff twice but Plaintiff did not pick up. (*Id.* ¶ 25). At 8:11 a.m., Blake sent Plaintiff a text message stating she was on her way to the WW Plant. (*Id.* ¶ 26). While on her way to the WW Plant, Blake contacted the City of Gallatin Emergency Management to notify them about the spill. (*Id.* ¶ 27). Before Blake and a City of Gallatin representative arrived at the WW Plant, Plaintiff took another break and did not attempt to put out PIGS, an absorbent, to stop the flow of chemicals into the creek or notify other management or clean-up crews to assist with the spill. (*Id.* ¶ 29).[2]

---

[2] Plaintiff testified in his deposition that PIGS were kept in the Main Plant but not the WW Plant. (Doc. No. 43-1 at 19).

When Blake arrived at the WW Plant, she contacted third-parties to assist with cleaning up the spill. (*Id.* ¶ 31). During the clean-up efforts, Plaintiff alleges Blake instructed Plaintiff to help her pick dead fish out of the creek and stated Defendant would be fined for each dead fish found in the creek. (*Id.* ¶ 34).

### *After the July 24, 2017 Spill*

The next day, Blake instructed Plaintiff to patch an area of the dock where grease was leaking from the Main Plant into the creek. (*Id.* ¶ 37). In the days following the spill, Plaintiff returned to his job as waste water operator. (*Id.* ¶ 44). On July 31, 2014, Plaintiff alleges he noticed chemicals leaking from a wall in the Main Plant. (*Id.* ¶ 39). He took pictures of the leak and sent them to Blake and Monroe Oden, his supervisors. (*Id.* ¶ 40). Plaintiff did not send the pictures to anyone else. (*Id.* ¶ 41).[3]

Based on surveillance footage of Plaintiff during the spill, Ed Henderson, Defendant's regional human resources manager, conducted a formal investigation into Plaintiff's response to the spill. (*See* Doc. No. 43-2 at 9-16). Henderson made the following conclusions from his investigation: (1) Plaintiff waited too long to contact Blake; (2) Plaintiff did not attempt to notify other members of management when he did not reach Blake; and (3) Plaintiff did not attempt to put PIGS out to contain the spill. (*Id.* at 15-17). Henderson was not aware that Blake asked Plaintiff to remove dead fish from the creek or that Plaintiff reported leaks to Blake or Oden. (Doc. No. 48 ¶ 55).

On August 8, 2014, Plaintiff received a demotion letter stating management had lost trust in his ability to operate the WW Plant based on his response to the spill and that he was disqualified

---

[3] Defendant appears to contest that Plaintiff was told to remove fish from the creek and reported leaks to management but states it will accept these facts as true for the instant motion. (Doc. No. 42 at 16 n.5, 17 n.6).

from his position as waste water operator. (*Id.* ¶ 58). Defendant did not terminate Plaintiff from his employment but instead offered him a choice of two positions. (Doc. No. 43-1 at 21; Doc. No. 43-2 at 22-23). Plaintiff decided to take the cook department position, which came with reduced pay but had similar benefits as his waste water operator position. (Doc. No. 48 ¶ 60; Doc. No. 43-2 at 22-23). Plaintiff, however, remained as waste water operator for several weeks until someone was hired to fill his position. (Doc. No. 48 ¶ 60).

Around November 2014, before starting his new position in the cook department, Plaintiff used all of his accrued paid time off. (*Id.* ¶ 62). On December 10, 2014, Plaintiff resigned from his employment with Defendant to take a position with the City of Gallatin. (*Id.* ¶¶ 64-65). Plaintiff is still working as a waste water operator for the City of Gallatin. (*Id.* ¶ 68).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence,

judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

### III. ANALYSIS

Defendant has moved for summary judgment on Plaintiff's sole claim—retaliatory discharge under the TPPA. (Doc. No. 41). The TPPA creates a cause of action for employees who are "discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b)-(c). In retaliatory discharge cases under the TPPA, courts apply a burden-shifting analysis similar to the one used in employment discrimination cases in federal courts under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See* Tenn. Code Ann. § 50-1-304(f).

A plaintiff employee bears the initial burden of presenting evidence to establish a *prima facie* case of retaliatory discharge. *Williams v. City of Burns*, 465 S.W.3d 96, 115 (Tenn. 2015). Under the TPPA, plaintiff must establish each of the following elements: (1) he was defendant's employee; (2) he refused to participate in or remain silent about illegal activities as defined by the statute; (3) he was terminated; and (4) an exclusive causal relationship existed between his refusal to participate in or remain silent about illegal activities and his termination. *Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006).

If plaintiff establishes his *prima facie* case, the burden shifts to defendant to produce evidence that a legitimate, non-retaliatory reason existed for plaintiff's discharge. Tenn. Code

5

Ann. § 50-1-304(f). If defendant produces such evidence, the burden shifts back to plaintiff to demonstrate that defendant's reason was not the true reason for plaintiff's discharge and the stated reason was pretext for unlawful retaliation. *Id.*

**I. Second Element of Plaintiff's *Prima Facie* Case**

Defendant argues that Plaintiff cannot prove the second element of his *prima facie* case because he, *inter alia*, failed to establish that he refused to remain silent about an illegal activity.[4] The TPPA defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect health, safety, or welfare." Tenn. Code Ann. § 50-1-304(a)(3). A plaintiff can maintain an action so long as his belief that a law was violated was reasonable and he acted in good faith in reporting it. *Coffey v. City of Oak Ridge*, 2014 WL 4536364, at *4 (Tenn. Ct. App. Sept. 12, 2014) (citing *Mason v. Seaton,* 942 S.W.2d 470, 472 (Tenn. 1997)). Although an employee need not report illegal activity directly to law enforcement officials, an employee must report the illegal activity to some entity other than persons who are allegedly engaging in it. *Smith v. C.R. Bard, Inc.*, 730 F. Supp. 2d 783, 797 (M.D. Tenn. 2010) (citing *Emerson v. Oak Ridge Research, Inc.,* 187 S.W.3d 364, 371 & n. 1 (Tenn. Ct. App. 2005)); *Haynes v. Formac Stables, Inc.*, No. W2013-00535-COA-R3-CV, 2013 WL 6283717, at *6 (Tenn. Ct. App. Dec. 4, 2013), *aff'd*, 463 S.W.3d 34 (Tenn. 2015).

---

[4] Defendant incorrectly believes Plaintiff's claim is partly premised on his removal of dead fish from the creek. (*See* Doc. No. 42 at 16-17). However, Plaintiff's TPPA claim is limited to reporting leaking chemicals. (*See* Doc. No. 7 at 3-6). In addition, as Defendant asserts, Plaintiff's removal of dead fish from the creek is not actionable under the TPPA because there is no evidence in the record to suggest that Plaintiff refused to remove the fish. Rather, the record establishes just the opposite. In light of the foregoing, the Court declines to address Defendant's arguments regarding the fish removal.

Plaintiff fails to establish that he reported the alleged illegal activity to someone other than the persons engaging in it. The undisputed evidence demonstrates that Plaintiff only reported the chemical leak to his supervisors, Blake and Oden.[5] In regard to Blake, Plaintiff admits that Blake was responsible for addressing the leak. (Doc. No. 47 at 4). In regard to Oden, Plaintiff fails to establish that Oden was not responsible for the leak. In fact, Henderson testified that Oden was one of five personnel authorized to commit resources and materials to contain leaks from polluting the environment. (Doc. No. 43-2 at 17). Because Plaintiff does not demonstrate that he reported the alleged illegal activity to persons other than those who engaged in it, Plaintiff fails to establish the second element of his *prima facie* case.

**II. Fourth Element of Plaintiff's *Prima Facie* Case**

Defendant also argues that Plaintiff cannot establish the fourth element of his *prima facie* case because he cannot show that his report of the ongoing leak was the sole cause of his demotion. To demonstrate causation, plaintiff is required to provide evidence more than mere facts showing the exercise of rights and a subsequent discharge; the fourth element requires direct evidence or compelling circumstantial evidence. *Smith*, 730 F. Supp. 2d at 800. Plaintiff's "mere belief or understanding of why he was dismissed, is not sufficient to create a genuine issue of material fact." *Id.*

Plaintiff does not present an argument to address Defendant's contention that he cannot establish the fourth element his *prima facie* case.[6] Plaintiff points to no direct or circumstantial

---

[5] Without citing to the record, Plaintiff's brief states that he reported the additional leakage to Henderson. (Doc. No. 47 at 9). However, Plaintiff's deposition testimony—stating that Plaintiff only made the reports to Blake and Olsen—directly contradicts this statement. (*See* Doc. No. 43-1 at 24).

[6] Instead, Plaintiff's argument focuses on establishing that Defendant's proffered legitimate non-retaliatory reason is pretext.

evidence that his purported whistleblower activity was a cause, let alone the sole cause, of his demotion. He merely asserts, "With a complete absence of any evidence to support its demotion . . . the trier of fact could determine that Supervisor Blake was motivated by [Plaintiff]'s statement that he was not going to be silent." (Doc. No. 47 at 14-15). However, this assertion, without additional evidence of a causal connection, is insufficient to meet Plaintiff's burden on summary judgment. In addition, the close temporal proximity between Plaintiff's report to Blake and Oden and his demotion is insufficient by itself to establish causation. *See Hugo v. Millennium Labs., Inc.*, 993 F. Supp. 2d 812, 825-26 (E.D. Tenn. 2014), *aff'd*, 590 F. App'x 541 (6th Cir. 2014) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001)) (stating that the temporal proximity between plaintiff's alleged report of illegal activity and plaintiff's termination was insufficient by itself to establish causation under the TPPA). Because Plaintiff fails to establish the second and fourth element of his *prima facie* case, the analysis ends. Defendant is entitled to entry of summary judgment on Plaintiff's retaliatory discharge claim under the TPPA.[7]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**, and this action is **DISMISSED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[7] Because the Court grants summary judgment on the aforementioned grounds, the Court does not address Defendant's additional arguments related to the third element of Plaintiff's *prima facie* case or Defendant's proffered legitimate non-retaliatory reason for Plaintiff's demotion.